**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| MAYRA FRANCO, individually and on behalf of a class of similarly situated persons, Plaintiffs, | ) ) ) | COMPLAINT– CLASS ACTION |
| vs. | ) ) | Civil Action No. |
| PROGRESSIVE CASUALTY INSURANCE COMPANY AND PROGRESSIVE SOUTHEASTERN INSURANCE COMPANY, | ) ) ) ) ) | Jury Trial Demanded |
| Defendants. | ) ) | |

_____

To THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiff, Mayra Franco, individually and on behalf of a class of similarly situated persons, entities, and businesses, ("Plaintiffs"), through undersigned counsel, files this Class Action Complaint against the Defendant, Progressive Casualty Insurance Company, and the Defendant, Progressive Southeastern Insurance Company, ("Defendants" and collectively "Progressive") and in support of the causes of action asserted herein, respectfully shows the Court the following:

**INTRODUCTION**

1.      For years, Progressive has deceptively underpaid its customers' vehicle total loss claims.  Although Progressive's vehicle insurance contracts require payment of the Actual Cash Value ("ACV") of a damaged motor vehicle, utilizing a specialized software program purchased from Mitchell International Inc. ("Mitchell"), called Work Center Total

Loss ("WCTL"), Progressive instead applies a blanket "projected sold adjustment" to all its customers' vehicle total loss claims.

2.      Progressive's "projected sold adjustment" scheme uses speculative future sale projections unrelated to the actual cash value of the customers' vehicles and results in reducing the amount Progressive represents to its customers they should be paid for the total loss of their vehicle.  The WCTL program is fully automated and applies a "projected sold adjustment" to all vehicle total loss claims, regardless of make, model, or condition of the vehicle.  It generates a written report which Progressive provides to all vehicle total loss claimants.

3.      Not only are the written total loss valuation reports Progressive provides to its customers deceptive, but the calculation itself is in direct violation of North Carolina's Administrative Code (NCAC) governing the payment of total loss claims which is a prima facie violation of North Carolina's unfair claim settlement practices laws and, in turn a violation of this state's Unfair and Deceptive Trade Practices Act ("UDTPA").  The payment of total loss claims calculated under the WCTL program rather than actual cash value is also a breach of Progressive's insurance contract with its insurance customers.

4.      The purpose of Progressive's systematic across-the-board use of the WCTL program is clear, as Progressive is now the largest motor vehicle insurance carrier in the United States, and the financial benefit of the company's systematic, across-the-board reduction in payment of all total loss claims is staggering.

5.      Plaintiff, Mayra Franco, is an insured under an automobile policy underwritten by the Defendant, Progressive Southeastern Insurance Company, and she

made a vehicle total loss claim which was managed and adjusted by the Defendant, Progressive Casualty Insurance Company, wherein she received a report generated by Progressive's WCTL program and was underpaid an amount for her total loss calculated through Progressive's deceptive WCTL program.

6.     Plaintiff, Mayra Franco, files this class action on behalf of herself and all other similarly situated North Carolina residents against Defendant, Progressive Casualty Insurance Company, for violations of North Carolina's unfair claim settlement practices laws and the Unfair and Deceptive Trade Practices Act and for breach of contract against Defendant, Progressive Southeastern Insurance Company.

## PARTIES

7.     Plaintiff, Mayra Franco, is a citizen and resident of Randolph County, North Carolina and at all relevant times herein was insured under a policy of insurance issued by the Defendant, Progressive Southeastern Insurance Company. She brings this action individually and on behalf of other similarly situated persons and businesses as defined herein who are citizens and residents of the State of North Carolina, or were citizens and residents at the time they made a vehicle total loss claim with Progressive.

8.     Defendant, Progressive Casualty Insurance Company, is a foreign corporation doing business in the State of North Carolina and licensed with the North Carolina Department of Insurance. Defendant, Progressive Casualty Insurance Company, is domiciled in Ohio with its principal statutory and administrative office located at 6300 Wilson Mills Road, W33, Mayfield Village, Ohio 44143.

9. Defendant, Progressive Southeastern Insurance Company, is a foreign corporation doing business in the State of North Carolina and licensed with the North Carolina Department of Insurance. Defendant, Progressive Southeastern Insurance Company, is domiciled in Indiana with its principal statutory office located at 111 Congressional Blvd., Ste 150, Carmel, IN 46032, and with its main administrative office located at 6300 Wilson Mills Road, W33, Mayfield Village, Ohio 44143.

## JURISDICTION AND VENUE

10. This Court has personal jurisdiction over Defendants because the Defendants market and provide insurance products as well as adjust claims throughout the State of North Carolina and make its insurance services available to residents of North Carolina. Further, this Court has personal jurisdiction over Defendants as the Defendants' wrongful conduct against Plaintiff and proposed Class Members occurred in substantial part in this District and because Defendants committed the same wrongful acts to other individuals within this judicial district, such that some of Defendant's acts have occurred within this District, subjecting Defendants to jurisdiction here.

11. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2), the Class Action Fairness Act ("CAFA"), because at least one member of the putative class, including the Plaintiff, is a citizen of North Carolina and Defendants are citizens of Ohio and Indiana, thus meeting CAFA's minimal diversity requirement. Additionally, the proposed Class consists of 100 or more members and the amount in controversy, when aggregated among a proposed class of thousands, exceeds $5,000,000.00, exclusive of costs and interest and fees that might be awarded.

12.     Venue in this case is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because the Defendants are deemed to reside in any judicial district in which it is subject to personal jurisdiction, and because a substantial part of the events giving rise to the claim occurred in this District, and because Plaintiff was injured in this District.

## FACTUAL ALLEGATIONS

13.     Progressive touts itself as the number one combined personal and commercial auto insurance company in the United States with over 35 million customers.

14.     Its claims processes and procedures for all auto total loss claims (personal and commercial) with any of its underwriters are controlled by Defendant, Progressive Casualty Insurance Company, which operates the central automobile claims center and claims website. Historically, Defendant, Progressive Casualty Insurance Company, has developed the methodologies and procedures to adjust total loss claims, developed and operates the total loss claim process, contracted with Mitchell and has copyrighted its total loss claims website which are used uniformly across its affiliate companies, including Defendant, Progressive Southeastern Insurance Company, and other Progressive companies operating in the State of North Carolina.

15.     In 2010, Progressive announced it had selected Mitchell to be its key software vendor to use in processing auto damage claims and produce total loss vehicle valuations using a Mitchell WCTL.

16.     In 2014, Mitchell entered into a contract (known as the "PD Suite Agreement") with Defendant, Progressive Casualty Insurance Company, to allow the Defendant, Progressive Casualty Insurance Company, to utilize the WCTL software of

Mitchell to adjust total loss claims for its insureds across all of its companies and affiliates. This contract was later replaced on January 1, 2020, with a new "Master Software and Services Agreement" intended to continue this relationship and allow the Defendant, Progressive Casualty Insurance Company, to utilize the licensed software products of Mitchell to adjust the vehicle total loss claims of all Progressive insureds, including those in the State of North Carolina.

17.    Upon information and belief, all Progressive insurance companies underwriting insurance policies in the State of North Carolina, including Defendant, Progressive Southeastern Insurance Company, submit their total loss claims to a central claims process owned, controlled, and managed by Defendant, Progressive Casualty Insurance Company, and all utilize this Mitchell valuation methodology which applies a common illegal scheme and claims handling practice.

18.    When adjusting a total loss claim, Progressive's uniform insurance policies with the Plaintiff and the putative class members require the Defendants to pay the actual cash value (ACV) of the motor vehicle.

19.    Further, North Carolina Administrative Code (NCAC), namely 11 NCAC 04.0418, governs the payment of "Total Losses on Motor Vehicles" in the State of North Carolina and sets forth the requirements for the manner and payment of the "total loss" of a motor vehicle in this state.

20.    Failure to follow the procedures of 11 NCAC 04.0418 is deemed by the Commissioner a prima facie violation of North Carolina General Statute 58-63-15(11), Unfair Claim Settlement Practices.

21.     In determining the ACV required to be paid by their insurance contracts, the Defendants are subject to these binding regulations in the State of North Carolina and Progressive is required to pay every proposed Class Member the ACV on their total loss claim in compliance with 11 NCAC 04.0418 and is required to use the methods set forth under that regulation to determine the ACV of a totaled vehicle.

22.     This binding state regulation requires that where a vehicle is deemed a "total loss" the claimant must be paid the pre-accident actual cash value of the motor vehicle. Absent any contrary agreement as to actual cash value between an insured and Progressive, the settlement offer must be based on "the published regional average values of substantially similar motor vehicles; and the retail costs of two or more substantially similar motor vehicles in the local market area when substantially similar motor vehicles are available or were available within 90 days of the accident to consumers in the local market area." 11 NCAC 04.0418 (d)(1) & (2)

23.     The local market area is defined as a 100-mile radius of the place where the motor vehicle is principally garaged. 11 NCAC 04.0418 (a)(2)

24.     "Published Regional Average Values" is defined in 11 NCAC 04.0418 as values derived from printed or electronically published motor vehicle pricing guides recognized in the motor vehicle industry, including National Automobile Dealers Association (NADA) Guide Book or Kelley Blue Book that analyze current and historical motor vehicles sales data taking into consideration the year, make, model and condition of the motor vehicle, motor vehicle market conditions, and geographic area to reach the average retail value of the motor vehicle. 11 NCAC 04.0418 (b)(3)

7

25.     Further, any settlement offers on the motor vehicle based on those values may only be "adjusted" for "condition, options, equipment, and mileage, less the costs of unrepaired damage that preexisted the accident." 11 NCAC 04.0418 (e)

26.     Further, any adjustments, as aforementioned, must be supported by documentation detailing the total loss vehicle's condition and the reason for the deviation. 11 NCAC 04.0418 (h)

27.     In adjusting total loss claims of its insured, Progressive's claim practices and methodology in paying total loss claims on motor vehicles failed to follow this binding North Carolina regulation.

28.     In paying vehicle total loss claims, Progressive uses a report generated by the WCTL program to determine what Progressive tells its insured is the purported ACV of the insured total vehicle as of the date of loss. Defendant, Progressive Casualty Insurance Company, prepares the valuation report, and then Progressive informs the Class Member/insured of the ACV Progressive will pay, which is the purported ACV shown on the valuation report generated by the WCTL program.

29.     Progressive is legally required to accurately evaluate the ACV of a totaled motor vehicle in compliance with its insurance contract and 11 NACA 04.0418. However, for the Plaintiff and Class Members (each of which can be identified by review of the actual reports and electronic data Progressive maintains internally or through its vendor) the valuation report used by Progressive to establish ACV instead took an <u>unsupported</u>, <u>impermissible</u> and <u>unverifiable</u> "adjustment" (which is <u>always</u> a deduction, i.e. resulting in

a reduction in the ACV that Progressive pays) for what the valuation report calls a "projected sold adjustment".

30.     This <u>unsupported</u>, <u>impermissible,</u> and <u>unverifiable</u> deduction is used to reduce the price/value of each of the comparable vehicles used in the valuation report. Because the price/value of comparable vehicles are then averaged to reach a "base value" upon which ACV is determined, this method results in a substantial deduction (on information and belief approximately 9% across Class Members' total loss valuations in the ACV upon which Progressive bases its payments to its insureds.)[1]

31.     The Mitchell valuation report used by Defendant, Progressive Southeastern Insurance Company, to determine the amount Progressive would pay Plaintiff, Mayra Franco, on the loss of her 2004 Jeep Grand Cherokee Laredo 4 Door Utility 4WD, illustrates how this "adjustment" is used in Progressive's favor to pay less than the actual cash value of a motor vehicle:

a.     The first page of the January 2, 2024, report lists what Progressive will pay:

**Valuation Summary**

**Loss Vehicle Adjustments**
Adjustments specific to your vehicle

|  |  |
|---|---|
| Base Value = | $3,731.10 |
| Condition | $525.45 |
| Prior Damage | $0.00 |
| Aftermarket Parts | $0.00 |
| Refurbishment | $0.00 |
| Market Value = | $3,205.65 |

**Settlement Value:**
**$2,801.82**

**Settlement Adjustments**
Adjustments specific to your policy

|  |  |
|---|---|
| (3.000%) Tax + | $96.17 |
| Deductible - | $500.00 |
| Settlement Value = | $2,801.82 |

---

[1] It is possible the Mitchell deduction is, on average, greater than this. Discovery and a sampling of claims will easily establish the amounts and averages of the deductions taken.

The ACV used to adjust Ms. Mayra Franco's total loss is identified as the "Market Value": $3,205.65, which is based on a "base value" of $3,731.10 that Progressive has determined by averaging the value of comparable vehicles.

b.    The vehicles used to determine this "Base Value" are then listed in chart form on page 3 of the report:

**Comparable Vehicle Information**

Search Radius used for this valuation: **75 miles from loss vehicle zip/postal code.**
Typical Mileage for this vehicle: **164,000 miles**

| # | Vehicle Description | Mileage | Location | Distance From Loss Vehicle | Price | Adjusted Value |
|---|---------------------|---------|----------|----------------------------|-------|----------------|
| 1 | 2004 JEEP GRAND CHEROKEE LAREDO 4D SUV 6 4NORMAL GAS A 4WD | 131,713 | 24112 | 63 miles | $4,800.00 List Price | $3,314.53 |
| 2 | 2004 JEEP GRAND CHEROKEE LAREDO 4D SUV 6 4NORMAL GAS A 4WD | 154,703 | 27603 | 65 miles | $5,999.00 List Price | $3,427.93 |
| 3 | 2004 JEEP GRAND CHEROKEE LAREDO 4D SUV 6 4NORMAL GAS A 4WD | 159,695 | 28079 | 68 miles | $6,498.00 List Price | $4,741.16 |
| 4 | 2004 JEEP GRAND CHEROKEE LAREDO 4D SUV 6 4NORMAL GAS A 4WD | 113,851 | 27604 | 69 miles | $6,999.00 List Price | $3,440.78 |
| | | | | | **Base Value:** | $3,731.10 |

The Base Value of these comparable vehicles is always "adjusted" by Progressive. The "Base Value" actually used by Progressive is the average of what Progressive deems is the "Adjusted Value" of the comparable vehicles.

c.    Page 5 and 6 of the report list a breakdown of the adjustments (i.e. the "deductions and additions") used by Progressive to reach the average "Adjusted Value" listed on the chart on page 3 for the comparable vehicles.

10

## 1 — 2004 JEEP GRAND CHEROKEE LAREDO 4D SUV 6 4 NORMAL GAS A4WD  List Price: $4,800.00

| VIN | Stock No | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
|---|---|---|---|---|
| 1J4GW48S84C355068 | A1923 | 11/11/2023 | 24112 | 63 miles |

**Source**

DEALER WEB LISTING -
BUILDSHEET - CARS.COM
MARTINSVILLE MOTORS
1319 SOUTH MEMORIAL
BOULEVARD
MARTINSVILLE VA 24112
540-676-6477

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|
| Projected Sold Adjustment | | | -$338.00 |
| Mileage | 237,783 | 131,713 | -$1,125.73 |
| Equipment | | | |
|  ADJUSTABLE ROOF RACK CROSSBARS | Yes | No | $7.49 |
|  CLOTH LOW-BACK FRONT BUCKET SEATS | No | Yes | -$11.24 |
|  FOG LAMPS | No | Yes | -$17.99 |
| | | **Total Adjustments:** | -$1,485.47 |
| | | **Adjusted Price:** | $3,314.53 |

## 2 — 2004 JEEP GRAND CHEROKEE LAREDO 4D SUV 6 4 NORMAL GAS A4WD  List Price: $5,999.00

| VIN | Stock No | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
|---|---|---|---|---|
| 1J8GW48S44C217722 | S217722 | 10/02/2023 | 27603 | 65 miles |

**Source**

DEALER WEB LISTING -
BUILDSHEET - VAST.COM
TRIANGLE AUTO SALES
4608 FAYETTEVILLE RD
RALEIGH NC 27603
919-779-1186

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|
| Projected Sold Adjustment | | | -$336.00 |
| Mileage | 237,783 | 154,703 | -$1,095.71 |
| Equipment | | | |
|  CONVENIENCE GROUP | Yes | No | $121.74 |
|  SPECIAL EDITION QUICK-ORDER PKG | No | Yes | -$746.58 |
|  FRONT/REAR FLOORMATS | Yes | SPECIAL EDITION QUICK-ORDER PKG | $16.17 |
|  COLD WEATHER GROUP | No | Yes | -$123.64 |
|  LEATHER TRIMMED FRONT BUCKET SEATS | No | Yes | -$161.68 |
|  PWR SUNROOF | No | Yes | -$152.17 |
|  FRONT/REAR SUPPLEMENTAL SIDE WINDOW CURTAIN AIRBAGS | No | Yes | -$93.20 |
| | | **Total Adjustments:** | -$2,571.07 |
| | | **Adjusted Price:** | $3,427.93 |

## 3 — 2004 JEEP GRAND CHEROKEE LAREDO 4D SUV 6 4 NORMAL GAS A4WD  List Price: $6,498.00

| VIN | Stock No | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
|---|---|---|---|---|
| 1J4GW48S74C348113 | SC-48113 | 09/24/2023 | 28079 | 68 miles |

**Source**

DEALER WEB LISTING -
BUILDSHEET - CARS.COM
ALL CITY AUTO SALES
13607 INDEPENDENCE BLVD
INDIAN TRAIL NC 28079
704-882-0440

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|
| Projected Sold Adjustment | | | -$364.00 |
| Mileage | 237,783 | 159,695 | -$1,108.51 |
| Equipment | | | |
|  TRAILER TOW GROUP | No | Yes | -$74.17 |
|  FOG LAMPS | No | Yes | -$24.73 |
|  PWR SUNROOF | No | Yes | -$164.83 |
|  AM/FM STEREO | No | Yes | -$20.60 |
| | | **Total Adjustments:** | -$1,756.84 |
| | | **Adjusted Price:** | $4,741.16 |

11

| 4 | 2004 JEEP GRAND CHEROKEE LAREDO 4D SUV 6 4 NORMAL GAS A4WD | | | List Price: $6,999.00 |

| VIN | Stock No | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
|---|---|---|---|---|
| 1J4GW48S54C352340 | 352340 | 10/07/2023 | 27604 | 69 miles |

Source

DEALER WEB LISTING -
BUILDSHEET - AUTOTRADER.COM
UPTOWN AUTO IMPORTS
3329 CAPITAL BLVD
RALEIGH NC 27604
919-706-5470

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|
| Projected Sold Adjustment | | | -$392.00 |
| Mileage | 237,783 | 113,851 | -$1,922.36 |
| Equipment | | | |
| CONVENIENCE GROUP | Yes | No | $142.03 |
| SPECIAL EDITION QUICK-ORDER PKG | No | Yes | -$871.03 |
| FRONT/REAR FLOORMATS | Yes | SPECIAL EDITION QUICK-ORDER PKG | $18.86 |
| TRAILER TOW PREP GROUP | No | Yes | -$23.30 |
| COLD WEATHER GROUP | No | Yes | -$144.25 |
| PWR SUNROOF | No | Yes | -$177.54 |
| LEATHER TRIMMED FRONT BUCKET SEATS | No | Yes | -$188.63 |
| | | Total Adjustments: | -$3,558.22 |
| | | Adjusted Price: | $3,440.78 |

32.     On page 5 and 6, Progressive adjusts for mileage and equipment. This is expressly allowed by 11 NCAC 04.0418. However, Progressive also applies an additional unlawful adjustment for a "projected sold adjustment" and unlike a deduction for mileage or options, this deduction cannot be verified and checked by an insured and is not permitted by 11 NCAC 04.0418. Where this "projected sold adjustment" specifically comes from and how it can be verified is unstated. The source or locality of which vehicle or vehicles is used to create this value is also not stated.

33.     The valuation report generated by the WCTL program and utilized by Progressive lists the average retail value of comparable vehicles in a "loss vehicle base value" chart and then next to it arbitrarily lowers the value of every single comparable vehicle found in the market to include this arbitrary and self-serving discount in favor of Progressive.

34. Further, Progressive quotes to a generic random website with national vehicle information. Such a deduction cannot be verified by a consumer where the underlying data is omitted and there is insufficient detail to determine where the data supporting this deduction is derived.

35. Progressive's only purported explanation for granting itself a discount on every comparable vehicle is stated in fine print at the end of the WCTL valuation report, as a belief that consumers would be able to negotiate and obtain a better price off a retail list price of a motor vehicle.

36. This systemic claim practice and deduction taken by Progressive violates the contract of the parties and the law for the payment of the actual cash value of total losses on motor vehicles in the following respects:

a. Published regional average values recognized in the industry already factor in pricing guides and historical past negotiated sales, *i.e.* historical sales data is already considered in reaching an average retail value of a vehicle and does not allow a further arbitrary additional deduction such as that taken by Progressive.

b. It fails to properly use published regional average values, such as pricing guides of NADA and Kelley Blue book, to obtain the value of the motor vehicle, in addition to the comparable vehicles, as required by North Carolina law.

c. It takes a "deduction" off the average retail value and the actual cash value of the motor vehicle not allowed by North Carolina law which only allows deductions and adjustments for the condition of the vehicle, options, equipment, and mileage and any unrepaired damage that pre-existed the accident.

13

d.     The WCTL program valuation report categorically excludes transactions that undermine its flawed pretexted theory that consumers always receive a discount: for example, transactions where the sold price exceeds list price, transactions from no haggle dealerships, and transactions where the sold price equals the advertised price.[2]

e.     The WCTL program valuation report is designed to manipulate the data on comparable vehicles to systemically lower the amount due for the payment of claims.

f.     It does not account for the value of trade in vehicles that may be part of a sales transaction, but not listed in sales data, uses national data not allowed to be used and other unreliable factors, which upon information and belief, dramatically overstate any average negotiation on the sales of vehicles.

g.     It speculates as to an amount, prospectively, if any, consumers may or may not negotiate in a sale and the number is arbitrary and not a proper methodology in the valuation of a motor vehicle and not a method allowed by the binding regulations of the State of North Carolina in the payment of total losses on motor vehicles. The State of North Carolina only allows historical data and retail prices to be used within 90 days of the loss, not a prospective and future speculative value.

h.     This "projected sold adjustment" is not based on local or current data as required by law.

---

[2] While Progressive claims it will not use this adjustment on actual sale values or no haggle dealership sales, in practice, this cannot be verified where the underlying data is omitted, and every comparable vehicle chosen is one listed for sale and where Progressive intentionally omits comparable vehicles sold at a list price or above in order to artificially deflate the value of the total loss vehicle.

i.      It fails to notify consumers of sufficient details and data behind this arbitrary "adjustment" and deduction.

j.      In other manners to be discovered in this litigation.

37.     This <u>unsupported</u>, <u>impermissible</u>, and <u>unverifiable</u> "adjustment" is always a deduction resulting in a reduction of the amount paid for vehicle total loss claims. It is used to reduce the value of <u>every</u> comparable vehicle listed in the report, which because the prices of comparable vehicles are then averaged, results in a substantial deduction and reduction in what Progressive then pays its insureds on their claims.

38.     The process results in Progressive paying less than the ACV of the vehicle when adjusting claims in this manner.

39.     Upon information and belief, the "Projected Sold Adjustment" scheme used by Progressive is simply an unsupported assertion that regardless of vehicle year, make, model, style, or time of year, vehicles at a particular price point will always have a set reduction in price. The assumption behind this unauthorized and illegal deduction defies common sense and is in direct contravention of the insurance policy and law.

40.     Plaintiff does not contest Defendant's representations of list price of comparable vehicles and does not contest the value assigned for conditions, options, mileage or equipment or preexisting damages to vehicles.  Therefore, the make, model, year, and condition of total loss vehicles are not at issue in this litigation.  Rather, the Plaintiff contests the blanket "projected sold adjustment" discount taken by Progressive for vehicle total loss claims that is not based at all on the condition or features of the particular motor vehicle involved in the claim.

15

41.     That upon information and belief the Defendant, Progressive Casualty Insurance Company, manages, operates and processes all claims for Progressive insureds in the State of North Carolina using the Mitchell WCTL valuation reports, including the auto total loss claims of the Defendant Progressive Southeastern Insurance Company, Progressive American Insurance Company, Progressive Casualty Insurance Company, Progressive Northern Insurance Company, Progressive Northwestern Insurance Company, Progressive Preferred Insurance Company, Progressive Advanced Insurance Company, Progressive Direct Insurance Company, Progressive Max Insurance Company, Progressive Premier Insurance Company of Illinois, and Progressive Universal Insurance Company.

42.     The Mitchell WCTL program is directed and implemented as one singular central claims process which is controlled, administered, directed, and supervised by the Defendant, Progressive Casualty Insurance Company.

43.     None of the Progressive companies operating and underwriting auto policies in the State of North Carolina, including the Defendant, Progressive Southeastern Insurance Company, operate or maintain an independent website and there is only one "Progressive" website for auto damage/loss claims.[3] The website is controlled and operated by Defendant, Progressive Casualty Insurance Company and Progressive Casualty Insurance Company owns the copyright.  The website explains Progressive's auto claims procedures, allows customers to establish a web account, allows customers to make a claim

---

[3] https://www.progressive.com/claims/auto-process/

online and to track the claim online through the customer's log-in account. The website does not differentiate claims made by individual or commercial customers.

44. None of the Progressive subsidiaries operating in the State of North Carolina, including the Defendant, Progressive Southeastern Insurance Company, operate or maintain an independent claims process or adjust their own claims independently.

45. There is only one "Progressive" claims procedure and only one claims process for all vehicle damage/loss claims and the process and procedure uses the WCTL program. The Progressive claim process and procedure is operated by Defendant, Progressive Casualty Insurance Company.

46. The actual policy terms and definitions of the contract of insurance for each Plaintiff and proposed class members also only contain the name "Progressive". There is one set of terms and definitions used by "Progressive" to pay the actual cash value of motor vehicles, which was developed, controlled, administered, and implemented by Defendant, Progressive Casualty Insurance Company.

47. Defendant, Progressive Casualty Insurance Company, controls every claim and operates it as one deceptive scheme and enterprise with regard to vehicle total loss claims.

48. All Progressive companies operating in the State of North Carolina, underwriting automobile policies and adjusting vehicle total loss claims, including the Defendant, Progressive Southeastern Insurance Company, use the Mitchell WCTL program valuation method as directed by Defendant, Progressive Casualty Insurance Company.

## PLAINTIFF'S TOTAL LOSS CLAIM

49.     The Plaintiff, Mayra Franco, owned a 2004 Jeep Grand Cherokee Laredo 4 Door Utility AWD motor vehicle which was in an accident on December 19, 2023. At the time of the accident, the Plaintiff was insured under an auto policy underwritten by Defendant, Progressive Southeastern Insurance Company.

50.     The policy required Defendant, Progressive Southeastern Insurance Company, to pay the ACV in the event of a total loss.

51.     Plaintiff made a claim with Progressive for the total loss of the vehicle.

52.     Upon information and belief, this claim was processed by Defendant, Progressive Casualty Insurance Company, and by use of its claim center utilizing Progressive's illegal and deceptive "projected sold adjustment" generated by the WCTL program.

53.     Defendant, Progressive Casualty Insurance Company, provided a total loss valuation to the Plaintiff based upon a valuation report generated by the WCTL program.

54.     Progressive valued Plaintiff's total loss claim at $3,205.65 and paid Plaintiff that amount less her taxes and deductible. The market valuation report listed values of four different comparable vehicles and shows that Defendant, Progressive Southeastern Insurance Company applied a "projected sold adjustment" to all four of the comparable vehicles, in amounts of $338.00, $336.00, $364.00, and $392.00, respectively.   These deductions equaled an approximately 9% reduction in the average price of the comparable vehicles thereby reducing the payment to the Plaintiff for the vehicle below the ACV of her motor vehicle.

55.     This "projected sold deduction" is deceptive, illegal, and not allowed by the insurance contract between the Plaintiff and Progressive (which requires Defendant, Progressive Southeastern Insurance Company, to pay the ACV of the vehicle) or the laws in the State of North Carolina.

## CLASS ACTION ALLEGATIONS

56.     This action is brought as a class action under the Federal Rules of Civil Procedure Rules 23(a)(1)-(4) and Rules 23(b)(3) as more specifically set forth below. Progressive's conduct has been systemic and continuous and has affected a large number of Progressive policyholders in the State of North Carolina insured by the Defendant, Progressive Southeastern Insurance Company, and all other Progressive companies operating in the State of North Carolina.

57.     This action seeks to recover damages suffered by the Plaintiff, and the Members of the proposed Class (collectively "Class Members"), all insureds of the Defendants, and/or who had their claim processed by the Defendants within the State of North Carolina as a result of a common policy directive from the Defendant, Progressive Casualty Insurance Company, and their uniform claims handling practices within all of their Progressive companies with respect to paying total loss claims to its own insureds under Progressive's personal and commercial first party auto physical damage coverages (Collision, Comprehensive, and Uninsured/Underinsured Motorist Coverage ("UM/UIM")) (collectively, "first party APD coverage").

58.     All proposed Class Members have fully complied with all pertinent policy provisions to receive payment under their policies with Progressive, and Progressive

19

determined that coverage existed for the loss and determined the claim to be a total loss.

No further performance is required by any proposed Class Members to secure all available

benefits provided by Progressive's policy.

<u>Class Certification Definition</u>

59.     Plaintiff seeks certification of the following Class and Sub-class:

<u>Class:</u>

All Progressive insureds of any North Carolina Progressive Company underwriting policies in North Carolina with first-party auto policies issued in the State of North Carolina, who received compensation for the total loss of their vehicles under their first party (comprehensive, collision, and UM/UIM) coverages, and who received a total loss valuation from Progressive generated by the WCTL program which took a deduction/adjustment for "projected sold adjustment" and were paid the amount of the valuation with the "projected sold adjustment."

<u>Sub-class:</u>

All insureds of Progressive Southeastern Insurance Company with first-party auto policies issued in the State of North Carolina, who received compensation for the total loss of their vehicles under their first party (comprehensive, collision and UM/UIM) coverages, and who received a total loss valuation from Progressive generated by the WCTL program which took a deduction for "projected sold adjustment" and were paid the amount of the valuation with the "projected sold adjustment."

60.     Excluded from the Class and sub-class are (a) the assigned Judge, the Judge's

staff and family, and Progressive employees, (b) claims where the total loss was on a "non-

owned" vehicle, where no insured has any ownership interest or rights in the vehicle, and

(c) claims where the insured submitted written evidence supporting a different valuation

and the amount of that different valuation submitted by the insured was paid by Progressive

to settle the total loss.

20

Numerosity

61.     Pursuant to Rule 23(a)(1), membership in the class is so numerous as to make it impractical to bring all Class Members before the Court. The exact number of Class Members is unknown but can be determined from the records maintained by the Defendants (including those readily obtainable by Progressive and from its vendor and agent, Mitchell) which allow the members of the proposed Class, as well as those who are then excluded, to be identified with precision.

Typicality

62.     Plaintiff, Mayra Franco, is typical of a member of the Class pursuant to Rule 23(a)(3). Plaintiff purchased a Progressive automobile policy, paid premiums, and made a claim for loss when her insured automobile was damaged. She filed a claim with Progressive and made her vehicle available for determination and payment of her loss. Progressive then elected to declare the vehicle a total loss, but underpaid the loss based upon a valuation Progressive generated using the WCTL program which used criteria to underpay the loss, which was not permitted under Progressive's contractual obligations and North Carolina law. Plaintiff's interest in obtaining compensation for her loss (the underpayment of her claim compared to the amount she would have received, but for, the illegal "projected sold adjustment" discount) are identical to those of other unnamed members of the Class.

<u>Commonality</u>

63.     Pursuant to Rule 23(a)(2) there are questions of law and fact common to all members of the proposed Class which predominate over any individual issues. Common questions of law and fact include the following:

a.      Whether Progressive's use of a "projected sold adjustment" discount complied with 11 NCAC 04.0418 and as such its obligations under its policies and its obligations as an insurer under those policies.

b.      Whether Progressive through such conduct breached its contracts of insurance with the Class Members by failing to compensate its insureds by taking a "projected sold adjustment".

c.      Whether Progressive breached the implied covenant of good faith and fair dealing.

d.      Whether Progressive has violated the North Carolina Unfair Claim Settlement Practices Act.

e.      Whether Progressive has violated the North Carolina Unfair and Deceptive Trade Practices Act.

f.      Whether Progressive underpaid the claims of the Members of the Class for their actual cash value of their vehicles by making a "projected sold adjustment".

g.      The amount by which Progressive underpaid the total loss claims of the members of the Class by using a "projected sold adjustment".

h.      Whether Plaintiff and the Class are entitled to an award of damages, including treble damages.

i.     Whether the Plaintiff and the Class are entitled to an award of attorney fees and costs.

j.     Whether the Plaintiff and the Class are entitled to declaratory and injunctive relief.

Adequacy Of Representation

64.    Plaintiff has no interest adverse to the interests of other members of the proposed Class and will fairly and adequately protect the interests of the Class pursuant to Rule 23(a)(4).

65.    Plaintiff has retained the undersigned counsel who are experienced and competent in the prosecution of class actions and complex litigation and have extensive experience necessary to prosecute this case and adequate resources to prosecute this claim.

Superiority

66.    Pursuant to Rule 23(b)(3), the questions of law and fact common to the proposed class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating this controversy. Absent a class action, Progressive's use of a computerized source which improperly underpays the actual cash value loss to its insureds will continue, and the class members will continue to suffer damage and Progressive's conduct will proceed without effective remedy.

67.    Individual class members of the proposed Class have little interest or ability to prosecute an individual action due to the relatively small damages suffered by each member of the proposed Class, and not knowing that Progressive's practices in settling

23

their total loss did not comply with NCAC regulations and as such that such an underpayment exists.

68.     This action will allow for the orderly, fair, and expeditious administration of Class claims, economics of time, effort and expense will be fostered, and uniformity of decisions will be ensured.   A collective adjudication will allow sufficient proof and expertise to be assembled to fairly value and prove the losses at issue.

69.     This action will present no difficulties which would impede its management by this Court as a class action and a class action is the best available means by which Plaintiff and the members of the proposed Class can seek redress for the harm caused to them by Progressive. An exact list of members of the proposed Class can be generated from Progressive and its vendor's records. Progressive's records will show amounts its insureds were underpaid for their total loss claims where the amounts paid were reduced for "projected sold adjustment". As such, both liability and damages can be shown on a Class wide basis with common evidence and then allow a recovery to be distributed to the members of the Class.

## FIRST CAUSE OF ACTION - BREACH OF CONTRACT

### (As to Defendant Progressive Southeastern Insurance Company)

70.     Plaintiff and the proposed Class Members reallege the allegations contained in the previous paragraphs as if fully set forth herein.

71.     Plaintiff and the Members of the proposed Class insured by Defendant, Progressive Southeastern Insurance Company, entered into contracts for insurance with the Defendant, Progressive Southeastern Insurance Company, which were the same in all

material respects. They paid all required consideration in the form of premiums for the coverage afforded by the insuring agreement.

72.     The Progressive policies, at all relevant times herein, provided insurance coverage to Plaintiff and the Members of the Class for physical damage and the total loss of their motor vehicle and provided for the payment of the "actual cash value" of their vehicle in the event of a total loss.

73.     The insurance contracts also contained an implied covenant of good faith and fair dealing requiring that neither party to the agreement would do anything to injure the right of the other to receive the benefits of the agreement, and each party agreed to act in good faith in performing the contract.

74.     Further, Defendant, Progressive Southeastern Insurance Company, was required to follow North Carolina law for the adjustment of total loss on motor vehicles pursuant to 11 NCAC 04.0418 which was also an implicit term of the contracts.

75.     The Plaintiff and the Members of the Class insured by Defendant, Progressive Southeastern Insurance Company, each suffered a total loss of a motor vehicle owned by them which was insured by their Policy with Progressive.

76.     As to each claim for Plaintiff and the Members of the Class insured by Progressive Southeastern Insurance Company, Progressive found coverage existed and determined the motor vehicles were a total loss.

77.     Plaintiff and the Members of the Class insured by Defendant, Progressive Southeastern Insurance Company, duly performed and fully complied with all the

conditions of the Policy and conditions precedent to filing this Complaint, including making their motor vehicle available to Progressive for valuation of the loss.

78.     The Defendant, Progressive Southeastern Insurance Company, had the opportunity to apprise themselves of the damages and obtain proof of the loss.

79.     Despite having received a claim in compliance with the insurance policy terms, Defendant, Progressive Southeastern Insurance Company, materially breached its contracts with the Plaintiff and the Members of the Class insured by them in the adjustment of their vehicle total loss claims, in the follow respects:

a.     Progressive failed to pay the actual cash value of the vehicles and underpaid the claims,

b.     Progressive failed to follow criteria set forth in 11 NCAC 04.0418 when adjusting the claims,

c.     Progressive made an improper deduction for "projected sold adjustments" in the payment of claims,

d.     Progressive WCTL program valuation reports to engage in a deceptive scheme to underpay claims,

e.     Progressive sought to benefit itself in the adjustment of claims to the detriment of its insured and engaged in unfair dealing and bad faith, and

f.     In other respects, to be discovered at trial.

80.     As the direct and proximate result of the foregoing material breaches by Defendant, Progressive Southeastern Insurance Company, Plaintiff, and the Members of

the Class insured by Progressive Southeastern Insurance Company have been damaged by the underpayment of their total loss claims, in an amount to be determined at trial.

## SECOND CAUSE OF ACTION – UNFAIR AND DECEPTIVE TRADE PRACTICES

**Unfair Claims Settlement Practices N.C.G.S. 58-63-15 (11) and N.C.G.S. 75-1.1, *et seq.***

**(As to Defendant Progressive Casualty Insurance Company)**

81.     Plaintiff and the proposed Class Members reallege the allegations contained in the previous paragraphs as if fully set forth herein.

82.     Defendants' acts and/or omissions described herein constitute business activities used in and/or affecting commerce as defined by Chapter 75 of the North Carolina General Statutes.

83.     Defendants' acts and/or omissions in creating and implementing an arbitrary scheme to deduct monies for a "projected sold adjustment" in the payment of total loss claims on motor vehicles is unfair and deceptive.

84.     Defendants' acts and/or omissions violated one or more provisions of the Unfair Claim Settlement Practices, N.C.G.S. 58-63-15(11), including, but not limited to:

a.     Failure to follow the requirements and procedures of 11 NCAC 04.0418 and underpaying total loss claims;

b.     Failure to adopt and implement reasonable standards for the prompt investigation of claims arising out of insurance policies;

c.     Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear; and

27

d. Attempting to settle a claim for less than the amount which a reasonable man would have believed he was entitled.

85. Defendants' violations of Unfair Claim Settlement Practices as aforementioned constitute violations of the Unfair & Deceptive Trade Practices Act, N.C.G.S. 75-1.1, *et seq.* as a matter of law.

86. In addition to the aforementioned violations, the manner in which the Defendant, Progressive Casualty Insurance Company, was adjusting these claims to add a "projected sold adjustment" is also separately and independently deceitful, violates industry standards and offends established public policy.

87. The act or practice engaged by the Defendant, Progressive Casualty Insurance company making this arbitrary "projected sold adjustment" is also unfair in that it is immoral, unethical, oppressive, unscrupulous, and substantially injurious to customers of Progressive with total loss claims.

88. Therefore, these deceptive actions of Defendant, Progressive Casualty Insurance Company, separately, alternatively, and additionally also constitute violations of the Unfair and Deceptive Trade Practices Act N.C.G.S. 75-1.1, *et seq.*

89. As a direct and proximate result of Defendant's acts and/or omissions as aforementioned and unfair and deceptive trade practices, the Plaintiff, Mayra Franco, and the Members of the proposed Class have been injured.

90. By virtue of its unlawful acts and/or omissions, Defendants are liable to and owe Plaintiff and the Class Members treble damages, attorney fees and costs, together with

all other damages Plaintiff, Mayra Franco, and the Class Members may prove as allowed by law.

## THIRD CAUSE OF ACTION - DECLARATORY AND INJUNCTIVE RELIEF

### (As to both Defendants)

91.     Plaintiff and the proposed Class Members reallege the allegations contained in the previous paragraphs as if fully set forth herein.

92.     Plaintiff and the proposed Class Members bring this action pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201 seeking a declaration that for those who maintain an auto insurance policy with Progressive in the State of North Carolina, it is a violation of 11 NCAC 04.0418 and the insuring agreement with Progressive for Progressive to base its total loss valuation and payment of claims on values of comparable vehicles which have been artificially reduced by an arbitrary and unjustified "projected sold adjustment".

93.     This Court has the power to declare the rights of said Progressive policyholders and those who would be insured under such policies and who may suffer similar losses in the future.

94.     This Court has the power to enjoin further unfair/deceptive acts/practices pursuant to 11 NCAC 04.0418.

**WHEREFORE**, Plaintiff and the proposed Class Members respectfully prays that the Court:

1.      Enter an Order certifying this action as a class action, including certifying each cause of action under the appropriate subsection of Fed.R.Civ.P.23;

2.      Enter an Order appointing Plaintiff, Mayra Franco, as class representative and appointing the undersigned counsel to represent the Class;

3.      Enter judgment in favor of Plaintiff and the Class Members for compensatory damages resulting from the Defendant, Progressive Southeastern Insurance Company's, breach of contract in the amount of underpayment to those within the proposed Class as measured by the amount which payments were reduced by the taking of a "projected sold adjustment" discount;

4.      Enter judgment in favor of Plaintiff and the Class Members against Defendant, Progressive Casualty Insurance Company, for unfair and deceptive trade practices in an amount to be determined at trial;

5.      Enter judgment for Plaintiff and the Class Members against Defendants trebling damages, awarding interest, and further awarding Plaintiff its attorney fees pursuant to N.C.G.S. § 6-21.1;

6.      For Declaratory and Injunctive Relief against the Defendants;

7.      Tax the cost of this action against the Defendants;

8.      Grant such other and further relief as the Court may deem just and proper; and

9.      Grant Plaintiff and Class Members a jury trial.

30

This, the 13th day of March, 2024.

Respectfully submitted,

*/s/ Kelly A. Stevens*

Kelly A. Stevens, NC Bar No.: 27066
Hemmings & Stevens, P.L.L.C
5540 McNeely Drive, Suite 202
Raleigh, NC 27612
Phone: (919) 277-0161
Fax:    (919) 277-0162
kstevens@hemmingsandstevens.com
*Attorney for Plaintiff*

*/s/ Aaron C. Hemmings*

Aaron C. Hemmings, NC Bar No.: 29810
Hemmings & Stevens, P.L.L.C
5540 McNeely Drive, Suite 202
Raleigh, NC 27612
Phone:   (919) 277-0161
Fax:      (919) 277-0162
ahemmings@hemmingsandstevens.com
*Attorney for Plaintiff*